**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| DAVID LASCO; LASCO DEVELOPMENT INC.; LASCO DEVELOPMENT CORP.; HIDDEN CREEK ESTATES, INC.; LAX INC.; STONEY RUN ESTATES, LP (a/k/a THE WINFIELD GROUP); and DBL TREE DEVELOPMENT COMPANY OF INDIANA, LP | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CAUSE NO.: 2:04-CV-467-PPS |
| TOWN OF WINFIELD; WILLIAM TEACH; and MARVIN PINKOWSKI, Individually and in their Official Capacities, | ) ) ) ) ) | |
| Defendants. | ) | |

**FINDINGS, REPORT AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE JUDGE PURSUANT TO**
**28 U.S.C. § 636(b)(1)(B) & (C)**

This matter is before the Court on a Motion to Enforce Settlement Agreement [DE 52], filed by the Defendants on January 8, 2007.

On January 9, 2007, District Court Judge Philip P. Simon entered an Order [DE 52] referring the Motion to Enforce Settlement Agreement to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

This Report constitutes the undersigned Magistrate Judge's combined proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).

**PROCEDURAL BACKGROUND**

On November 12, 2004, Plaintiffs David Lasco, Lasco Development, Inc., Lasco Development Corp., Hidden Creek Estates, Inc., Lax, Inc., Stoney Run Estates, L.P., and DBL Tree Development Company of Indiana, L.P. (hereinafter for the sake of convenience collectively referred to as "Lasco" or "the Lasco Plaintiffs" unless otherwise indicated) filed their Complaint against Defendants Town of Winfield, William Teach, and Marvin Pinkowski (hereinafter for the sake of convenience collectively referred to as "the Town of Winfield"). The Complaint alleges that the Town of Winfield violated the Lasco Plaintiffs' 14th Amendment Constitutional rights under the Equal Protection Clause and the Due Process Clause by various acts of discrimination against the Lasco Plaintiffs based on race, religion, and personal animus in connection with the Lasco Plaintiffs' plans and efforts to develop a real estate subdivision known as Hidden Creek Estates II.

On January 11, 2005, the Town of Winfield filed its Answer denying the allegations in the Complaint and asserting certain affirmative defenses.

At various times throughout the years 2005 and 2006, the parties discussed among themselves possible settlement of this litigation.

On December 6, 2006, the parties participated in a Settlement Conference facilitated by the undersigned Magistrate Judge. A settlement of the litigation was not achieved.

On January 8, 2007, the Town of Winfield filed a Motion to Enforce Settlement Agreement [DE 52] and a Memorandum in Support [DE 53]. On January 9, 2007, the Honorable Philip P. Simon referred the Motion to the undersigned Magistrate Judge for a report and recommendation [DE 55]. On January 15, 2007, the Lasco Plaintiffs filed their Response in Opposition to the Motion [DE 57] and on January 19, 2007, the Town of Winfield filed a Reply [DE 60].

On March 19, 2007, Plaintiffs filed a Supplemental Designation of Evidence in Opposition to the Motion to Enforce Settlement Agreement [DE 62]. On March 20, 2007, Plaintiffs filed a Notice with the Court indicating that the parties had completed their discovery and briefing in connection with the Motion to Enforce Settlement Agreement and that the Motion was ripe for adjudication [DE 63].

On April 26, 2007, the Court issued an Order taking the Motion under advisement and setting the Motion for Evidentiary Hearing [DE 67]. The scheduled hearing was continued and rescheduled twice, once at the request of each side.

On June 11, 2007, the parties filed their Trial Briefs [DE 74 & DE 75].

On June 12, 2007, the Evidentiary Hearing on the Motion to Enforce Settlement Agreement was held and concluded. The evidence presented included a written Joint Stipulation of Facts [DE 77].

**FINDINGS OF FACT**

The Court makes findings of fact as set forth below. When communications between the parties are referred to in these facts, in most of the instances, communications between the sides were made by counsel for the parties.

In January 2006, the Lasco Plaintiffs communicated to the Town of Winfield an offer to settle this case for: (1) payment to the Lasco Plaintiffs of $150,000; (2) Town of Winfield approval of a performance bond for the Hidden Creek Estates II project in a reasonable amount of money (no specific amount); and (3) issuance by the Town of Winfield of a letter of apology to the Lasco Plaintiffs (wording to be later determined).

3

By that time, the Town of Winfield had informed the Lasco Plaintiffs that Lasco would need to present a performance bond in the amount of $1,200,000 and Lasco had objected based on his position that the amount of $1,200,000 was unreasonably high.

On or about June 21, 2006, the Town of Winfield informed the Lasco Plaintiffs that the Town engineer had calculated the amount the Town would require on Lasco's performance bond to be the modified amount of $1,060,000.

Shortly after June 21, 2006 (still in the month of June), the Town of Winfield communicated a counteroffer to the Lasco Plaintiffs to settle this case for: (1) payment to the Lasco Plaintiffs of $15,000; (2) approval of a performance bond in a reasonable amount of money (no specific amount); and (3) a letter of apology from the Town to the Lasco Plaintiffs (wording to be later determined).

In July, 2006, the Lasco Plaintiffs communicated a counteroffer to the Town of Winfield to settle this case for: (1) payment to the Lasco Plaintiffs of $200,000; (2) approval of a performance bond in a reasonable amount of money (no specific amount); and (3) a letter of apology from the Town to the Lasco Plaintiffs (wording to be later determined).

On or about July 21, 2006, the Town of Winfield asked the Lasco Plaintiffs to provide documentation to substantiate Lasco's money demand of $200,000. In response, the Lasco Plaintiffs' accountant, Tom Witherow, prepared a financial report to substantiate Lasco's loss claims. The report concludes that Lasco's damages are in excess of $3,000,000. Tom Witherow faxed the report to counsel for the Town of Winfield on July 25, 2006.

On August 8, 2006, the parties met for the scheduled deposition of David Lasco. At that point in time, the Lasco Plaintiffs' July 2006 counteroffer to settle this case remained open, valid and unresponded to ((1) $200,000 payment, (2) approval of performance bond in a reasonable

4

amount (no specific amount), and (3) a letter of apology from the Town to the Lasco Plaintiffs (wording to be later determined)). Present at the deposition were the deponent David Lasco, Lasco's attorney Steven Groth, Lasco's attorney Theodore Fitzgerald, Town of Winfield attorney, Matthew Clark, Town of Winfield Town Board member, William Teach (he observed but did not participate in the discussions), and the court reporter. Before the deposition formally began, the parties engaged in further settlement negotiations.

At the August 8, 2006 settlement discussions, counsel for the Town of Winfield broached money amounts of $25,000, later $100,000, and later $150,000 as settlement amounts to possibly discuss with the Town's insurance carrier. During the August 8, 2006 settlement negotiations, the Lasco Plaintiffs did not use such words as "withdrawn," "revoked," "terminated" or a similar term regarding their pending July counteroffer. Nevertheless, the Lasco Plaintiffs made statements to the Town of Winfield such as "the price of poker has just gone up," "the cost of settlement has just increased," the amount of "$200,000 now is just a starting point for discussion," and that David Lasco "can't even buy a car for $200,000" or statements substantially similar.

Near the conclusion of the August 8, 2006 settlement discussions, the parties agreed that they would hold further settlement discussions in the near future involving the inclusion of the Town of Winfield's insurance carrier since the insurance carrier would be paying the monetary payment component of any settlement.

By the conclusion of the August 8, 2006 settlement discussions, counsel for the parties had arranged to meet with the Town of Winfield's insurance carrier on August 11, 2006, in order to give the Lasco Plaintiffs an opportunity to demonstrate to the Town's insurance carrier the strength of Lasco's case and the substantiation of the alleged losses.

On August 10, 2006, at 10:40 a.m., counsel for the Town of Winfield faxed to counsel for the Lasco Plaintiffs a letter purporting to accept Lasco's July 2006 counteroffer to settle the case ((1) $200,000 payment, (2) approval of a performance bond in a reasonable amount (no specific amount), and (3) issuance by the Town of Winfield of a letter of apology to the Lasco Plaintiffs (wording to be later determined).

A few hours later on the same day, August 10, 2006, at 5:04 p.m., counsel for the Lasco Plaintiffs faxed to counsel for the Town of Winfield a letter stating that the July 2006 Lasco counteroffer had been withdrawn at the August 8, 2006 deposition meeting, that the Town's purported acceptance did not constitute an acceptance, and that the Town was invited to engage in further settlement discussions.

Frequently throughout the rest of August and September 2006, the Town of Winfield and the Lasco Plaintiffs engaged in further settlement discussions.

On or about August 30, 2006, the Town of Winfield provided the Lasco Plaintiffs with underlying documentation to support the Town's calculation of the amount of Lasco's performance bond (the amount being requested by the Town).

On October 6, 2006, the parties agreed to request that the Court schedule a Settlement Conference. The judicial Settlement Conference was held on December 6, 2006. A settlement was not successfully achieved.

Throughout the multiple settlement discussions over many months on various occasions, the Lasco Plaintiffs told the Town of Winfield that a very important part of any settlement terms would be the wording of the Town's apology. The wording of the Town's apology letter was finalized at the December 6, 2006 Settlement Conference.

6

The amount of the performance bond to be posted by the Lasco Plaintiffs was never agreed upon (to this day it remains undetermined).

Throughout the multiple settlement discussions over many months the parties at all times understood that any agreed settlement terms would in fact not constitute a final settlement agreement until formally approved by the Town of Winfield at a town board public meeting.

## APPLICABLE LAW

A settlement agreement is essentially interpreted like any other contract.  *See U.S. v. Rand Motors*, 305 F.3d 770, 774 (7th Cir. 2002); *Hernnreiter v. Chicago Hous. Auth.*, 281 F.3d 634, 636 (7th Cir. 2002).  "Issues regarding the formation, construction and enforcement of settlement agreements are governed by state contract law."  *Sims-Madison v. Inland Paperboard and Packaging, Inc.*, 379 F.3d 445, 448 (7th Cir. 2004).

Under Indiana law, the elements of a binding contract include an offer, acceptance of the offer, consideration, and meeting of the minds between the parties.  *See Bennett v. Broderick*, 858 N.E.2d 1044, 1048 (Ind. Ct. App. 2006).  The parties must have a meeting of the minds on all essential terms in order for a contract to be binding.  *Id.*  Material terms of a contract must be reasonably certain or determinable.  *See McLinden v. Coco,* 765 N.E.2d 606, 613 (Ind.App. 2002) ("All that is required is reasonable certainty in the terms and conditions of the promises made, including by whom and to whom.").  The contract must "provide a basis for determining the existence of a breach and for giving an appropriate remedy." *Id.*  (citing Restatement (Second) of Contracts § 33(2), at 92 (1981)).

7

An offer is valid and can be accepted until or unless it is revoked or withdrawn before acceptance.  *See* Restatement (Second) of Contracts § 42 ("An offeree's power of acceptance is terminated when the offeree receives from the offeror a manifestation of an intention not to enter into the proposed contract."); *Williston on Contracts* § 5:8 ("As a result of the rule that unsealed promises without consideration are not binding, offers, unless under seal in a jurisdiction recognizing the seal or given for a consideration, may be revoked by the offeror at any time prior to the creation of a contract by acceptance.")

Any act or communication that would cause a reasonable person to believe that an offer has been withdrawn or revoked is sufficient to constitute a withdrawal or revocation of the offer (no specific words or magic words are necessary).  *See Williston on Contracts* § 5:8 ("In general, any statement which clearly indicates or implies unwillingness on the part of the offeror to contract according to the terms of the offer is sufficient, though the offeror does not use the word "revoke" or any similar operative language.").

It is well settled that in order for an offer and an acceptance to constitute a contract, the acceptance must meet and correspond with the offer in every respect.  *See I.C.C. Protective Coatings, Inc. v. A.E. Staley Mfg. Co.* 695 N.E.2d 1030, 1034-1035 (Ind.App. 1998).  An acceptance which varies the terms of the offer is considered a rejection and operates as a counteroffer, which may then be accepted by the original offeror.  *Id.*  Thus, a counteroffer terminates a previous offer or previous counteroffer.

8

## ANALYSIS

Throughout the lengthy process of on-again off-again settlement discussions between the parties, each counteroffer operated as a termination of any previous offer or counteroffer. No more than one offer or counteroffer was valid at any particular point in time.

The Lasco Plaintiffs' counteroffer to settle the case for: (1) a $200,000 payment; (2) approval of a performance bond in a reasonable amount (no specific amount); and (3) a letter of apology from the Town to the Lasco Plaintiffs (wording to be later determined) was made in July 2006 and it was valid at the time the August 8, 2006 settlement discussions began (at the deposition of David Lasco).

However, at the August 8, 2006 settlement discussions, the Lasco Plaintiffs effectively withdrew that offer. They did so by making several statements that a reasonable person would believe constituted withdrawal. Those statements include:

>   (1) Pointing out that the accountant's report substantiates over $3,000,000 in losses by Lasco;
>   (2) Stating that Lasco's losses are on-going at a rate of $10,000 per week;
>   (3) Stating that "the price of poker has just gone up;"
>   (4) Stating that the amount of "$200,000 is now just a starting point for discussion."

Therefore, when on August 10, 2006, the Town of Winfield purported to accept the terms of Lasco's July 2006 counteroffer, it was unable to do so and it did not do so because the Lasco counteroffer was no longer valid, having been withdrawn two days prior.

The Town of Winfield's conduct *after* August 10, 2006 (*after* purportedly accepting the counteroffer) suggests that the Town believed that there had not been a valid offer and acceptance. After August 10, 2006, the Town of Winfield:

>   (1) Continued participation in several more weeks of settlement negotiations;
>   (2) Provided the Lasco Plaintiffs with underlying documentation to support the Town's calculation of the performance bond amount; and
>   (3) Participated in a judicial settlement conference in December 2006.

9

The Town of Winfield waited five months after its purported acceptance of the counteroffer before filing in Court its Motion to Enforce Settlement Agreement, having participated in a judicial Settlement Conference in the interim.

The belated assertion by the Town of Winfield that on August 10, 2006, it accepted the Lasco counteroffer and that there was then a meeting of the minds fails for an additional reason. A meeting of the minds in contract negotiations cannot occur until the material terms of the contract are reasonably certain or reasonably capable of determination. *See McLinden,* 765 N.E.2d at 613. On August 10, 2006, two of the three material terms of Lasco's counteroffer and of the Town's purported acceptance were not reasonably certain nor reasonably capable of determination. The amount of the performance bond was in dispute and not determined. The wording of the Town's letter of apology was not determined (the Lasco Plaintiffs had on multiple occasions told the Town that the wording on the apology letter would be a very important component of any settlement agreement).

## CONCLUSION

Based on the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that District Court Judge Philip P. Simon find that the parties did not reach a settlement agreement on August 10, 2006, and **DENY** the Motion to Enforce Settlement Agreement [DE 52].

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(B). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have ten (10) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals.   Willis v. Caterpillar, Inc., 199 F.3d 902, 904 (7th Cir.

1999); Hunger v. Leininger, 15 F.3d 664, 668 (7th Cir. 1994); The Provident Bank v. Manor Steel Corp., 882 F.2d 258, 260-261 (7th Cir. 1989); Lebovitz v. Miller, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

      SO ORDERED this 26th day of June, 2007.

                                            s/ Paul R. Cherry  
                                            MAGISTRATE JUDGE PAUL R. CHERRY  
                                            UNITED STATES DISTRICT COURT

cc:     All counsel of record