UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| DAVID LASCO; LASCO DEVELOPMENT INC.; LASCO DEVELOPMENT CORP.; HIDDEN CREEK ESTATES INC.; LAX INC.; STONEY RUN ESTATES, LP (a/k/a THE WINFIELD GROUP); and DBL TREE DEVELOPMENT COMPANY OF INDIANA, LP | ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 2:04 CV-467-PPS |
| TOWN OF WINFIELD; WILLIAM TEACH; and MARVIN PINKOWSKI, Individually and in their Official Capacities | ) ) ) ) | |
| Defendants. | ) | |

## ORDER

This matter is before the Court on Defendants' Objection to Magistrate Judge Paul R. Cherry's June 26, 2007, Report and Recommendation ("R&R"). [Doc. 83.] In the R&R, Judge Cherry recommends the denial of Defendants' Motion to Enforce Settlement Agreement because Plaintiffs' settlement offer was revoked prior to the August 10 acceptance, and the absence of a meeting of the minds on all the material terms of the contract rendered any purported contract unenforceable. [Doc. 78.] This Court has reviewed *de novo* those portions of the R&R to which Defendants' have objected, as required by 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b), and this Court agrees with Judge Cherry's finding that the July 21, 2006, settlement offer was revoked during the August 8, 2006, settlement discussions.  Because Defendants cannot establish the existence of a valid offer at the time of their alleged acceptance, the Court need not address the

remaining issues raised in Judge Cherry's R&R and the Defendants' objections thereto.  *See, generally, Trustwine Estate Dev. Co., LLC v. Comsub Design and Engineering, Inc.*, 854 N.E.2d 890 (Ind. App. 2006) (threshold requirement for enforceable contract is the existence of a valid offer).  For the reasons explained more fully below, this Court **ADOPTS** the R&R, in part, **OVERRULES** Defendants Objections [Doc. 83], and **DENIES** Defendants' Motion to Enforce Settlement Agreement [Doc. 52].

## **BACKGROUND**

At the outset, this Court notes that neither Plaintiffs nor Defendants filed any objections to Judge Cherry's findings of fact in the R&R; accordingly, I adopt Judge Cherry's findings for purposes of the present analysis.  *Thomas v. Arn*, 474 U.S. 140 (1985) (if neither party objects to the magistrate judge's findings of fact, the district court can assume the correctness of these findings).

In November 2004, Plaintiffs David Lasco, Lasco Development, Inc., Lasco Development Corp., Hidden Creek Estates, Inc., Lax, Inc., Stoney Run Estates, L.P., and DBL Tree Development Company of Indiana, L.P. (collectively referred to as "Plaintiffs") filed a complaint against Defendants Town of Winfield, William Teach, and Marvin Pinkowski (collectively referred to as "Defendants") alleging that Defendants violated Plaintiffs' constitutional rights under the 14th Amendment.  After engaging in several settlement negotiations, Plaintiffs made a settlement offer to Defendants on July 19, 2006, the terms of which included: 1) a $200,000 payment to Plaintiffs; 2) a performance bond for the Hidden Creek Estates II project in a reasonable amount of money (with no amount specified); and 3) a letter of apology from the Town of Winfield to Plaintiffs (wording to be determined at a later time).

2

Shortly thereafter, Defendants requested documentation by Plaintiffs to substantiate their claim for damages. On July 25, 2006, Plaintiffs' accountant prepared and faxed Defendants a report concluding that Plaintiffs' damages were in excess of $3 million.

When the parties convened for the scheduled deposition of David Lasco on August 8, 2006, Plaintiffs' July 19, 2006, offer remained open. Before commencing the deposition, the parties engaged in further settlement negotiations, at which time Defendants broached $25,000, then $100,000, and then $150,000 as settlement amounts to possibly discuss with Defendants' insurer. During these settlement discussions, Plaintiffs never expressly informed Defendants that their July 19, 2006, offer was withdrawn, revoked, or terminated; however; David Lasco did advise Defendants that "the price of poker just went up," that "the cost of settlement just increased," and that the amount of "$200,000 is just a starting point for discussion." At the end of the settlement discussions, the parties agreed that they would hold further discussions in the near future in order to allow for the insurer's participation.

On August 10, 2006, Defendants faxed a letter to Plaintiffs purporting to accept Plaintiffs' July 19, 2006, settlement offer. Later that same day, Plaintiffs faxed a letter to Defendants advising them that the purported acceptance was invalid because the settlement offer had been revoked during the August 8 settlement negotiations. Subsequent to this exchange, the parties continued to engage settlement negotiations over the course of the next several months, during which time they finally agreed on the language for the apology letter, but failed to agree on the amount of the performance bond.

After reviewing the evidence before him, Judge Cherry concluded that Defendants' Motion to Enforce Settlement Agreement should be denied because, among other things,

3

Plaintiffs' settlement offer had been revoked. Defendants objected to Judge Cherry's recommendation on this issue because they believe that David Lasco's statements on August 8, 2006 were insufficient to revoke the July offer, that Plaintiffs' attorney had many opportunities to make the revocation explicit prior to Defendants' August 10, 2006 acceptance and failed to do so, and that the circumstances and line of business surrounding the negotiations required Plaintiffs to state explicitly that the offer was revoked.  [Doc. 83.]

## **DISCUSSION**

When a party objects to a magistrate's report and recommendation, the district court "shall make a *de novo* determination of those portions of the report . . . or recommendations to which objection is made."  28 U.S.C. §636(b)(1)(C).  In doing so, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  *Id.*; Fed. R. Civ. P. 72(b).

A settlement agreement is interpreted like any other contract.  *U.S. v. Rand Motors*, 305 F.3d 770, 774 (7th Cir. 2002).  Accordingly, the threshold issue presented by Defendants' motion to enforce is whether Plaintiffs' July19 settlement offer was revoked prior to Defendants' August 10 acceptance, as any such revocation would be fatal to Defendants' request for enforcement of the purported settlement agreement.  *See Ochoa v. Ford*, 641 N.E.2d 1042 (Ind. App. 1994) (it is fundamental that a contract can only be formed by the exchange of a valid offer and corresponding acceptance between contracting parties).  "An offeree's power of acceptance is terminated when the offeree receives from the offeror a manifestation of an intention not to enter into the proposed contract." RESTATEMENT (SECOND) OF CONTRACTS § 42.  *See also* WILLISTON ON CONTRACTS § 5:8 ("as a result of the rule that unsealed promises without consideration are

not binding, offers ... may be revoked by the offeror at any time prior to the creation of a contract by acceptance.")  An offer can be revoked prior to its acceptance if the offeror either expressly revokes the offer or implicitly revokes the offer by clearly manifesting an unwillingness to enter into the proposed bargain.  RESTATEMENT (SECOND) OF CONTRACTS § 42, Comment d.

The evidence before this Court establishes that Plaintiffs implicitly revoked their July 19 settlement offer when they manifested their unwillingness to enter into that agreement during the parties' August 8 settlement negotiations.  The facts establish that Plaintiffs extended their settlement offer on July 19, and followed it up a few days later with Witherow's financial report estimating Plaintiffs' damages to be in excess of $3,000,000.  It does not appear that the parties had any substantive discussions about the settlement offer or the financial report until they convened for the August 8 deposition of David Lasco.  During the August 8 negotiations, Defendants broached sums of $15,000, then $50,000, and then $150,000 as possible amounts to discuss with their insurance carrier.  David Lasco, in turn, stated that "the price of poker has just gone up," that "the cost of settlement has just increased," that "$200,000 was just a starting point for discussion," and that he "can't even buy a car for $200,000."  While Defendants' receipt of the financial report is not, in and of itself, proof of Plaintiffs' revocation of the offer, it provides context to the statements that were made during the August 8 settlement negotiations.  I further find that David Lasco's August 8 statements informed Defendants that Plaintiffs were increasing their settlement demand from the previously requested $200,000 demand made on July 19.  Viewed collectively, these facts clearly demonstrate that on August 8, Plaintiffs manifested their unwillingness to enter into their proposed settlement agreement, thereby resulting in an implicit revocation of their offer.

The fact that Plaintiffs had several opportunities to revoke their offer prior to the August 8 settlement negotiations does not impact my finding that Plaintiffs revoked their offer.  The critical inquiry for determining the existence of a revocation is whether the offeror manifested his desire to no longer enter into the proposed agreement, not whether the offeror could have revoked his offer at an earlier time but did not.  Defendants' suggestion that an offeror's failure to revoke an offer at the first available opportunity somehow impairs the validity of a later revocation runs counter to the rules governing revocation.  *See, e.g.,* WILLISTON ON CONTRACTS § 5:8 ("offers ... may be revoked by the offeror *at any time* prior to the creation of a contract by acceptance.")  Regardless of when Plaintiffs *could* have revoked their offer, the fact is that Plaintiffs' *did* revoke the offer on August 8.

Finally, Defendants object to Judge Cherry's finding that Plaintiffs revoked their offer because the circumstances surrounding the negotiations required Plaintiffs to explicitly– not implicitly– revoke their offer.  (Defs.' Objections at p. 6-7.)  Relying on *Zimmerman v. McColley*, 826 N.E.2d 71 (Ind. App. Ct. 2005) and the Restatement (Second) of Contracts § 26, Defendants argue that Plaintiffs could not withdraw their offer without using "customary terms in the legal community, such as withdrawn, revoked or rescinded." (Defs.'s Objections at p. 6-7.)  However, *Zimmerman* and Section 26 do not deal with revocation of offers; instead, they address when a manifestation to enter into a bargain can be construed as an offer.  *Zimmerman*, 826 N.E.2d at 77.  Because neither *Zimmerman* nor Section 26 speak to the issue of revocation, this Court overrules Defendants' objection that "*Zimmerman* [and Section 26] negate[ ] a finding that ... in the absence of usage of customary terms in the legal community such as withdrawn,

6

revoked or rescinded, would give rise to a reasonable belief that Plaintiffs were withdrawing their offer of July 2006."

For the reasons listed above, this Court overrules Defendants' objections and agrees with Judge Cherry's finding that Plaintiffs revoked their July 19 offer on August 8.  Because Defendants cannot establish the existence of a valid offer at the time of their alleged acceptance, the Court need not address the remaining issues raised in Judge Cherry's R&R and the Defendants' objections thereto.  For all these reasons, the Court **OVERRULES** Defendants' Objections to Judge Cherry's Report and Recommendation [DE 83], **ADOPTS, IN PART,** Judge Cherry's Report and Recommendation [DE 78] and **DENIES** Defendants' Motion to Enforce [DE 52].  Furthermore, this Court **ORDERS** the parties to attend a telephonic status conference on September 5, 2007, at 1:00 p.m.  By no later than noon on September 4, 2007, the parties shall provide this Court with contact information for all attorneys that plan on attending the telephonic conference.

**SO ORDERED.**

ENTERED: August 14, 2007

s/ Philip Simon  
Philip P. Simon, Judge  
United States District Court